Second National Bank of Robinson, Robinson, Illinois,
Appellant, v. Charles E. Jones et al., Appellees.

Opinion filed March 1, 1941.

VALMORE PARKER and J. C. EAGLETON, both of Robinson, for appellant.

CHAS. E. JONES, of Robinson, for certain appellees.

REHEARING OPINION.

PER CURIAM.

This is an appeal from a decree of the circuit court of Crawford county, dismissing the second count of appellant's complaint, and a supplemental complaint, for want of equity, and rendering judgment against appellant for costs.

The complaints were filed by the appellant, Robinson State Bank, for the purpose of setting aside certain conveyances and that certain properties be made sub-

ject to sale on an execution on a judgment held by appellant against appellee Charles E. Jones.

Appellees filed a motion to dismiss the appeal, setting forth a number of grounds, including the specific contention that the transcript of proceedings was not properly certified by the presiding judge as required by sec. 198, subsec. 2, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.074]. We do not deem it pertinent to discuss other grounds stated in such motion.

The order signed by the trial judge, appended to the transcript of proceedings, was as follows: "And forasmuch as the matters and things hereinbefore set forth do not otherwise appear of record, the plaintiff tenders this, its Record of Proceedings, and prays that the same may be signed and sealed by the Judge of this court, pursuant to the statute in such case made and provided; which is accordingly done this 16 day of September, A. D. 1939. Roy E. Pearce, Judge. (SEAL.)"

Considerable confusion has been evident as to the effect of a certification of a transcript of proceedings under the Civil Practice Act, and this court must concede that by the case of *Suttles v. Zimmerman*, 287 Ill. App. 316, this court may have added to the misunderstanding in interpretation of the section referred to and the requisites as to certification of a transcript of proceedings under the Practice Act. While it is true that in the *Suttles* case the certificate read: "Presented for signature this 13th day of March, A. D. 1934." which was signed by the trial judge, and that there was another certificate to the effect that the transcript was a true, full and complete record of the proceedings, which was not signed by the trial judge, to attempt a distinction on the ground that the certificate signed in such case had less dignity, or was intended to be any less conclusive than the certification in the instant case because of the practice of courts to certify such transcripts twice, once with an informal and later

with a formal certificate, does not, in the opinion of this court, furnish a logical basis of distinction.

We had at first felt that the *Suttles* case had established a precedent which should not be departed from, but upon reconsideration of the problem involved, we feel that the principle enunciated in that case and the principle which would be required to be stated in this case if we were to follow the precedent in the *Suttles* case, would furnish an undesirable precedent, and might defeat the objects and purposes of the Civil Practice Act and the sections relating to certification of transcripts of proceedings.

Section 4 of the Civil Practice Act contains a provision to the effect that the act shall be liberally construed to the end that controversies between the parties may be speedily and finally determined according to substantive rights. It has been directed to the attention of this court that certificates substantially of the character involved in the instant case have been sustained as sufficient in all respects under our former Practice Act (*People ex rel. Vaughan v. Scanlan,* 265 Ill. 609; *People ex rel. Sprague v. Clark,* 298 Ill. 170; *Sanders v. Grand Lodge A. O. U. W.,* 153 Ill. App. 7; *Grand Lodge A. O. U. W. v. Ehlman,* 246 Ill. 555). As we have previously observed, unless required to hold to a more technical or precise rule by statutory enactment, we should endeavor to be at least as progressive and liberal in construction of the Civil Practice Act as was true of interpretations of the Practice Act of 1907.

Under section 4 of rule 1 of this court (which is identical with section 4, rule 36 of the Supreme Court Rules) it is provided that a claim that the trial court record actually before the court on appeal is not properly authenticated, may be raised only by motion, supported by affidavit, showing not only that the matter complained of is not properly authenticated, but that it is, in fact, incorrect and that injury will result to the

objecting party because of its inclusion. It is further provided that unless such motion is made, the record is deemed to be correct.

In view of such rule, it is the conclusion of this court that no precise or technical form of certification is required, and that the test should always be whether the transcript has, in fact, been certified by the court, irrespective of the form of such certificate. We do not desire, however, that this opinion carry with it the implication that appellant is relieved of the necessity of obtaining a certificate by the trial judge of such correctness and completeness. A certificate which specifically recites that the transcript is true, correct, and complete, is obviously sufficient. In the instant case, the fact that the transcript as presented, demonstrated on its face that it was complete and that no objection was made that the transcript was incorrect, and that counsel, in writing, admitted that the transcript was correct, have all been considered by the court and have aided in moving the court to the conclusion herein stated. Anything in the case of *Suttles v. Zimmerman, supra,* inconsistent with the conclusion of the court herein stated, is herewith expressly overruled. Motion of appellees for dismissal of appeal is herewith denied, and we shall proceed to a consideration of this cause on its merits.

As heretofore stated, the complaint consisted of two counts. On the portion of the complaint not appealed from, the relief requested by the appellant in count 1 had been granted in the trial court, and the collateral security therein sought to be subjected to execution was decreed to be sold, and the net proceeds applied toward payment of the judgment against appellee Charles E. Jones. Appellant apparently has accepted the benefits of the portion of the decree not appealed from and seeks to have reversed the action of the trial court in dismissing the second count of the original complaint and the supplemental complaint, for want of equity as hereinbefore stated.

The second count of the complaint alleged in substance that the father of appellees, Charles E. Jones, and Ramon Jones, died leaving them, equally, a certain 160 acre farm, certain city property, and an oil and gas lease on the farm land calling for delivery of a one-sixth (⅙) interest of oil and gas recovered on such land. It was alleged that on December 1, 1931, appellee Charles E. Jones became indebted to appellant on a certain promissory note, upon which he thereafter defaulted, and that on December 9, 1935, a judgment was rendered on such note against such appellee, Charles E. Jones. On June 22, 1936, an execution was issued on the judgment and it was stated that no property was found in Crawford county on which the sheriff could make a levy. Such count alleges that Charles E. Jones entered upon a plan to hinder and delay appellant in collecting the amount due it from said Charles E. Jones by entering into certain transactions specified in the complaint. It is specifically charged that on April 10, 1931 (which was prior to the creation of any indebtedness), said Charles E. Jones, and his wife, executed a quit claim deed of all his interest in the farm land and city property to his brother, Ramon Jones, which deed was filed for record on April 13, 1931. At the same time (April 10, 1931) Ramon Jones, and his wife, executed a quitclaim deed to Charles Jones for a half interest in the 160 acres and the city property referred to, which was not recorded until June of 1933. On January 1, 1932, Charles E. Jones, and his wife, for a stated consideration of ten dollars ($10) and other valuable consideration, executed a deed to defendant Claude C. Pearson for said one-half interest in the 160 acres and all interest in the city property and such deed was not recorded until August, 1932.

In verified answers appellees deny that appellant was a creditor at the time of the making of any of the conveyances attacked for the reason that the original transfers were in April of 1931, and the note was not

signed until December 1, 1931, and for the further reason that there had been a transfer and sale of the note to the Second National Bank of Robinson, Illinois. It was alleged in the sworn answers of Charles E. Jones and his wife that, the reason for not recording the Pearson deed was that negotiations were not completed until August, 1932, and at that time the deeds were delivered between the parties and recorded. It was also alleged that the transfer of deeds between the appellees, Charles E. Jones and Ramon Jones, in addition to being based on transfers on the exchange of dollars, was made in consideration of the transfer of certain other lands of which their father died seized. It was stated that the reason for not recording the deed from Ramon Jones to Charles E. Jones was simply to permit Ramon Jones to sell the properties, if possible (Charles E. Jones having taken up residence in Florida during such time). It was also stated in such answers that the transfer to Claude C. Pearson was made in consideration of certain oil, gas, mineral rights and royalties in a mineral deed from said Pearson to Charles E. Jones, in addition to the ten dollar ($10) consideration.

In the supplemental complaint appellant seeks to set aside certain tax deeds of the 160 acre tract of which appellee Rush B. Lankston became purchaser on October 1, 1934, and received tax deeds on October 5, 1936. It was alleged that on April 12, 1937, said Lankston executed a quitclaim deed to the wives of Charles E. Jones and Ramon Jones. It is sought to subject such lands and the oil and gas interests therein to the satisfaction of the judgment against appellee Charles E. Jones.

In view of the fact that the tax deed to Sadie C. Jones, wife of Charles E. Jones, was apparently paid for from the proceeds of the sale of royalty oil which accumulated between the time of the tax sale and the date of the quitclaim deed from Lankston, our conclu-

sions will be the same with reference to the interest acquired under the tax deed. No consideration has apparently been paid for the land, or for such oil interest.

Creditor's suits, as determined in the cases decided in this State, fall into general classifications designated as "Fraud in Law" cases, and "Fraud in Fact" cases. The distinction between such classes of cases is as to whether or not there is any consideration for the transfer under attack. In the "Fraud in Law" cases where the transfers are made without consideration and are deemed to be voluntary, and where it appears that such transfers directly tend to or do impair the rights of creditors, the question of actual fraud, or fraud in fact, or fraudulent intent or motive of the parties is immaterial and plaintiff is not required in such cases to show a fraudulent intent on part of the grantor, or participation in such fraud by a grantee (*Birney v. Solomon*, 348 Ill. 410; *Kennard v. Curran*, 239 Ill. 122). The rule in such cases is predicated on the principle that "one must be just before he is generous." An actual insolvency need not be shown to render a voluntary conveyance void where the conveyance is between husband and wife. The test of the validity of such voluntary conveyance, as against creditors, is whether or not it directly tended to or did impair the rights of creditors (*Birney v. Solomon, supra*).

The burden of dispelling the implication of fraud as against pre-existing creditors where a grantor is found to be insolvent, after having made a voluntary conveyance to his wife, is upon such grantee (*Birney v. Solomon, supra; Dillman v. Nadelhoffer*, 162 Ill. 625).

The other class of creditor's actions, which are designated as "Fraud in Fact" cases, all involve transfers in which an actual consideration is passed. In such cases, even though a full and adequate consideration may have been given for the transfers, yet if the trans-

fers are not made in good faith, but for the fraudulent purpose of defeating creditors, such transfers may be set aside. In such cases, however, it is necessary for a plaintiff to show that there was fraud in fact on the part of the debtor, and participation in such fraud on the part of the grantee (*Luthy & Co. v. Paradis,* 299 Ill. 380; *Beidler v. Crane,* 135 Ill. 92).

As we have indicated herein, it is the presence or absence of a consideration for the transfer which determines into which class such transfer falls, but if the consideration which is paid for the transfer is very small in comparison to the value of the property, and where the circumstances attending the transfer are extremely unfavorable to the fairness of the transaction (though not sufficient to establish absolute fraud), the conveyance is regarded as a voluntary one to the extent of the difference between the actual consideration and the real value of the property, and to that extent is treated as fraudulent and void as to existing creditors (*Snyder v. Partridge,* 138 Ill. 173.)

In the instant case no evidence was introduced showing that the assignment of the oil and gas lease to Sadie C. Jones was based upon any consideration, and such conveyance being voluntary, the burden was upon the defendants, Charles E. Jones and Sadie C. Jones, to show that said Charles E. Jones retained sufficient property, after the transfer, to satisfy his obligations. There is a statement in the record by the said Charles E. Jones that he owned a 160 acre farm in Franklin county, but the record is silent as to the value of such farm. The burden is on the defendants to show that the said Charles E. Jones was solvent after making the transfers under consideration, and the mere statements as to the ownership of the 160 acre farm falls short of discharging such burden.

The transfer to Pearson, which is alleged in the answer to have been made in consideration of securing a mineral deed to Texas land, likewise, under the record

in this case, cannot be sustained under the precedents hereinbefore referred to. The mineral deed to which reference was made was not introduced in evidence by the defendant, and the fact that the said Charles E. Jones withheld recording his deed from his brother Ramon, after he had incurred the obligations to the Bank, and after he had made the conveyance to Pearson; the circumstance that the said Charles E. Jones, by an undisclosed agreement, reserved the oil rights for the benefit of his wife (although the deed to Pearson was an absolute conveyance by warranty deed), together with the fact that Pearson, after receiving his deed, conveyed a part of the lands to pay a debt of the said Charles E. Jones, coupled with the further fact that Charles E. Jones is now living on the city property conveyed to Pearson, and that Pearson has defaulted in this case; all tend to show a lack of good faith in the conveyance to Pearson (*Beidler v. Crane, supra*).

It would, therefore, seem from the evidence that the assignment of the oil and gas lease to Sadie C. Jones was voluntary, and being voluntary, the intent or motive of the said Charles E. Jones, or his wife, whether fraudulent or not, would be immaterial since the said Charles E. Jones was in failing circumstances and the effect of the transfer was to hinder his creditors. The burden, as we have indicated, was upon the wife to dispel the implication of fraud from such transfer, and she was required to show that the property remaining in the hands of the said Charles E. Jones, after the transfer to her, was more than equal to the amount of his indebtedness. In the present state of the record no attempt was made by either Charles E. Jones, or his wife, to prove that after such transfer, sufficient property was retained by him to satisfy his debts and discharge his liability to the Bank.

The transfer to Pearson apparently lacks the element of good faith required by the cases in view of the

facts that secret reservations were made by Jones, and his wife, and that Charles E. Jones now lives in part of the premises conveyed, and that Pearson has defaulted.

We have given this case careful consideration and now feel that the decree of the trial court as to the second count and supplemental complaint cannot be sustained by the evidence, and that the interest of the parties, in view of the fact that certain matters in evidence to sustain the position of the defendants are too vague and not clearly shown, requires that this cause be remanded for further hearing, giving to the defendants Charles E. Jones and Sadie C. Jones, his wife, the opportunity to submit further evidence, if they are able so to do, to show that the assignment of the oil and gas lease to the said Sadie C. Jones was based on a full and adequate consideration and made in good faith, and, if such fact cannot be shown, that although such transfer was voluntary, the said Charles E. Jones retained sufficient property after such transfer to fully pay off his obligations to the plaintiff. In default of such proof such transfer should be set aside. As to the transfer to Pearson, the defendants should, likewise, be given an opportunity to introduce such evidence as they may desire to show that the conveyance to Pearson was made for a full and adequate consideration, and in good faith, and, in default of such proof, the conveyance to Pearson should be set aside as fraudulent.

The portion of the decree of the circuit court of Crawford county which has been appealed from, is, therefore, reversed, and this cause is remanded to such court for the limited purposes as stated in this opinion.

*Reversed and remanded with directions.*