VELLE TRANSCENDENTAL RESEARCH ASSOCIATION, INC., *et al.*, Plaintiffs-Appellants, *v.* ESQUIRE, INC., Defendant-Appellee.

First District (3rd Division)    No. 60741

Opinion filed August 19, 1976.—Rehearing denied September 16, 1976.

Kelsey D. Bartlett, of Toledo, Ohio, for appellants.

Don H. Reuben, Lawrence Gunnels, and Shane H. Anderson, all of Kirkland & Ellis, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiffs in the instant case, Velle Transcendental Research Association, Inc., a nonprofit corporation (hereinafter referred to as Velle), and Richard M. Brayton, the president of said corporation, filed a complaint against Esquire, Inc., alleging libel arising out of an article published in the November, 1971, issue of Esquire Magazine. Richard Brayton further brings this action on behalf of all other persons similarly situated in Velle. Pursuant to defendant's motion heard December 26, 1972, the trial court dismissed the complaint. Plaintiffs thereafter filed a post-trial motion captioned as one to "Rehear (Retry) Defendant's Motion Heard Dec. 26, 1973 and/or Permit Amendment of Complaint." Accompanying plaintiffs' motion was a proposed amendment to the complaint. After a hearing, the trial court ordered that plaintiffs' motion be denied and it is from this order that plaintiffs now appeal.

On review plaintiffs make the following contentions: (1) that the lower court improperly decided that Illinois law rather than California law should govern the pleadings; (2) that the lower court improperly applied Illinois law to the pleadings; and (3) that the lower court improperly denied plaintiffs' amendment to the complaint.

We affirm.

There is no dispute concerning the essential facts involved in the instant case. The allegedly libelous statement appeared in an article entitled "Charlie and the Devil" published in the November, 1971, issue of Esquire Magazine. The article concerns Charles Manson and his "Satan Cult." The precise language about which plaintiffs complain was printed in a "box" under the title "The Influence of Satan" and reads in pertinent part as follows:

"* * * Gazing about Los Angeles, it is possible to discern at least three death-trip groups that must have provided powerful sleazo inputs into Manson and the family:

1. The Process Church of the Final Judgment, an organization espousing End of the World slaughter.

2. The Solar Lodge of the Ordo Templi Orientis, a magical cult specializing in blood-drinking, sado-sodo sex magic and hatred of blacks.

3. An obscure occult group of forty or so which we shall here call the Kirke Order of Dog Blood.

* * *

"The Ordo Templi Orientis (O.T.O.) was founded in 1902 in Germany. The cult purports to continue the work, so to speak, of the order of the Knights Templar. Aleister Crowley formed his own O.T.O. 'chapter' in England in 1911. It has been around ever since, with current world headquarters in Switzerland. One of

Crowley's spiritual heirs is Jean Brayton who operated a Solar Lodge of about fifty souls at the U.S.C. campus gates with a network of cult houses and a bookstore.

"The first two grades of the Brayton Hollywood cult, the so-called Mineral grades, didn't have to drink blood. But the upper levels reveled in sacrificing cats, dogs, chickens, etc., and drinking their blood, reportedly consummating acts of sex magic while animal blood was poured upon the fornicators.

"Five separate individuals have claimed that they were told by a member of Brayton's O.T.O. Lodge that Manson was involved with the Lodge. Two family members, one of them Susan Atkins, have said that the family participated in ceremonies involving the drinking of dog blood and the sacrifice of animals: a new form of psychedelic vampirism, i.e., getting hits off blood while on dope."

The named plaintiffs in the complaint are Velle Transcendental Research Association, Inc. (hereinafter Velle), and Richard Brayton, the president of Velle. The complaint alleged that Velle was a nonprofit corporation, incorporated under the laws of California and having its offices in Los Angeles; that the above language was of and concerning Velle and its religious activities; and that Velle was falsely and maliciously referred to as "The Ordo Templi Orientis (O.T.O.)" and the "Solar Lodge of the Ordo Templi Orientis."

The complaint went on to allege that as a result of the above publication, Velle has been injured in its reputation in the State of California and throughout the United States by being held up to hatred, ridicule and disgrace and by making it impossible to pursue the purpose for which it was incorporated. The complaint then asked for $5,500,000 in compensatory and punitive damages.

Defendant moved to strike and dismiss the complaint on the grounds, *inter alia,* that: (1) the language complained of was not of and concerning the plaintiffs, and (2) the complaint failed to plead special damages. The trial court granted this motion on December 26, 1973. On January 24, 1974, plaintiffs moved to have the cause reheard and to file an amendment to the complaint. In this amendment plaintiffs alleged in pertinent part that plaintiff Richard Brayton is the husband of Jean Brayton named in the allegedly libelous article; that Velle was the only religious group to which Richard Brayton and his wife belonged during the period mentioned in the publication; that Richard Brayton and his wife organized Velle to study all religions to form a better basis for study of the Deity; that one of the religious groups Velle studied was Ordo Templi Orientis. The amendment went on to allege that the name Velle was not known to the general public as the group to which plaintiffs belonged; that Richard

Brayton in conjunction with his wife and other members of Velle operated boarding houses and a bookstore for U.S.C. students; that Richard Brayton was in the upper levels of Velle; that defendant used the name Ordo Templi Orientis as pertaining to Velle; that plaintiff, his wife and all active members of Velle are easily identifiable as the persons referred to in the article; and that prior to the article Velle was prospering and is now losing membership.

The court denied plaintiffs' motion and in a memorandum opinion held that (1) Illinois law was applicable; (2) that the language was, on its face, not of and concerning the plaintiffs; (3) that the proposed amendment did not cure the fatal defects of the complaint; and (4) that even if plaintiffs could bridge the fatal gap of the article's complete lack of any mention or identification of the plaintiffs, the failure to allege special damages in either the complaint or proposed amendment required that plaintiffs' motion be denied.

■■■ The first issue that plaintiffs present for review is whether or not the trial court properly applied Illinois law. In deciding this question we must apply the "most significant contacts" rule. (*Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593; *Snead v. Forbes, Inc.* (1971), 2 Ill. App. 3d 22, 275 N.E.2d 746.) "As applied to multistate defamation cases, the state of most significant relationship will usually be the state where the person allegedly defamed was domiciled at the time." (*Snead v. Forbes, Inc.* (1971), 2 Ill. App. 3d 22, 26, 275 N.E.2d 746, 748-49.) Plaintiffs allege in their complaint that Velle is incorporated in and has its principal place of business in California. While plaintiffs make no allegation in their complaint concerning the domicile of the individual plaintiffs, they do state in their brief that "plaintiffs are residents and citizens of California." The complaint further states that defendant Esquire, Inc., is incorporated under the laws of the State of Delaware; that Esquire Magazine is published monthly in Chicago, Illinois; and that plaintiff has been injured in California, Illinois and throughout the United States. Applying the rule in *Snead*, we conclude that the State of most significant relationship with the occurrence and parties and the place of greatest potential injury to the plaintiffs is the State of plaintiffs' domicile, California. Thus, the substantive law of California will control the resolution of the substantive issues in this case.

■■ Apart from the fact that Illinois adopts the innocent construction rule (*Lepman v. Everett* (7th Cir. 1964), 333 F.2d 154) and California does not (*MacLeod v. Tribune Publishing Co.,* (1959), 52 Cal. 2d 536, 343 P.2d 36), the substantive law of Illinois concerning the identity of the person allegedly libeled is generally the same as that of California. In Illinois a writing can libel a person without mentioning that person by name, but it must appear on the face of the complaint that a third person

reading the article must have reasonably understood that the article was written of and concerning the plaintiff and that it referred to him. (*Coffey v. MacKay* (1972), 2 Ill. App. 3d 802, 277 N.E.2d 748; *Algozino v. Welch Fruit Products Co.* (1951), 345 Ill. App. 135, 102 N.E.2d 555.) Similarly, in California there is no requirement that the person defamed be mentioned by name. (*Washer v. Bank of America, National Trust & Savings Association* (1943), 21 Cal. 2d 822, 136 P.2d 297.) It is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff and if the publication points to the plaintiff by description or circumstance tending to identify him. *Di Giorgio Fruit Corp. v. American Federation of Labor & Congress of Industrial Organizations* (1963), 215 Cal. App. 2d 560, 30 Cal. Rptr. 350.

However, as to what plaintiffs must plead to show that the allegedly libelous publication was of and concerning plaintiffs, the law of California differs substantially from that of Illinois. In California there is no requirement that plaintiffs plead extrinsic facts to show that the defamatory words apply to the plaintiff. It is sufficient to state that the words are of and concerning the plaintiff. (Cal. Civ. Pro. Code §460 (West 1954).) However, this is a rule of pleading which does not assert a principle of substantive law and which was not intended to dispense with the substantive requirement of proving facts showing that the article published was of and concerning plaintiffs. (*Noral v. Hearst Publications, Inc.* (1940), 40 Cal. App. 2d 348, 104 P.2d 860.) In Illinois if a libelous article does not name the plaintiff it must be alleged and proved that persons other than plaintiff and defendant must have reasonably understood that the article was of and concerning the plaintiff. *Algozino v. Welch Fruit Products Co.* (1951), 345 Ill. App. 135, 102 N.E.2d 555.

■■ In matters of pleading, including the sufficiency of pleadings or whether a cause of action is stated in a pleading, the law of the forum governs (16 Am. Jur. 2d *Conflict of Laws* §76 (1964)) and in determining the sufficiency of the complaint we will thus apply the law of the forum State, Illinois.

■■ Applying the procedural law of Illinois which dictates that plaintiff must plead those facts denoting that the publication was of and concerning the plaintiffs, we conclude that the trial court was correct in ordering that plaintiffs' complaint be dismissed. The allegedly libelous publication nowhere names any entity called Velle Transcendental Research Association, Inc., or any individual named Richard Brayton. Plaintiffs' complaint merely concludes that Velle was referred to in the article as the "Ordo Templi Orientis" and the "Solar Lodge of the Ordo Templi Orientis." Such a conclusion of the pleader is disregarded in considering the efficacy of a motion to dismiss. *Bottorff v. Spence* (1962), 36 Ill. App. 2d 128, 183 N.E.2d 1.

Considering all of the allegations of the complaint and the proposed amendment, we conclude that plaintiffs have failed to allege sufficient facts showing that the publication referred to them and that the trial court correctly ordered that the complaint be dismissed.

Order affirmed.

MEJDA, P. J., and DEMPSEY, J., concur.